UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

Terry A. Curtin,

    Defendant.

Civil No. 15-CR-163 (MJD/HB)

**ORDER**

  The above-entitled matter came before the Court upon the Report and Recommendation of United States Magistrate Judge Hildy Bowbeer.  The Government objects to the Magistrate Judge's finding that the statements recorded on the Current Capability Evaluation ("CCE") form were involuntary, and should therefore be suppressed.

  Pursuant to statute, the Court has conducted a <u>de novo</u> review upon the record.  28 U.S.C. § 636(b)(1); Local Rule 72.2(b).  Based upon that review, the Court will sustain the Government's objection and will deny the Defendant's motion to suppress in its entirety.

## I.     Introduction

The Defendant has been charged by Indictment with making a false statement to obtain federal employee's compensation in violation of 18 U.S.C. § 1920.  The charge is based on the following factual basis:  the Defendant was employed by the U.S. Postal Service during all relevant times and on or about September 8, 2010, she sustained an on-the-job injury to her foot and sought Worker's Compensation Benefits.  From June 23, 2011 through September 20, 2014, the Defendant received Federal Employees' Compensation Act ("FECA") benefits totaling $125,167.37.   The U.S. Department of Labor, Office of Workers' Compensation ("OWCP") administers FECA benefits.

Pursuant to periodic reporting requirements, the Defendant completed, certified and submitted Forms EN-1032 on numerous occasions.  The certification section of this form provides:

> I know that anyone who fraudulently conceals or fails to report income or other information which would have an effect on benefits, or who makes a false statement or misrepresentation of a material fact in claiming a payment or benefit under the Federal Employees' Compensation Act may be subject to criminal prosecution, from which a fine or imprisonment, or both, may result.

> I understand that I must immediately report to OWCP any improvement in my medical condition, any employment, any change in

status of claimed dependents, any third-party settlement, and any change in income from Federally assisted disability or benefit programs.

I certify that all the statements made in response to the questions on this form are true, complete, and correct to the best of my knowledge and belief.

It is alleged in the Indictment that between May 13, 2014 and June 15, 2014, the Defendant performed physical activities that were inconsistent with her alleged disability, and that the physical work actually performed by the Defendant was work she could have performed with the U.S. Postal Service. At no time did the Defendant inform OWCP that her medical condition had improved. The Indictment alleges that on May 22, 2014, the Defendant made false statements on the EN-1032 form by falsely reporting her medical condition and failing to report improvements in her medical condition.

In August and September 2014, the Defendant received letters that were prepared by Special Agent Rebecca Wayerski, a criminal investigator with the U.S. Postal Service. The letters requested that the Defendant attend an interview with a Postal Service contractor in an effort to reduce workers' compensation costs, by identifying "claimants who can be placed either in a productive limited duty position, or referred to an outplacement vocational rehabilitation program."

(Gov't Exs. 1 and 2.)   The letters warned that "failure to cooperate with this process will be reported to the Office of Workers' Compensation Programs and could affect your Workers' Compensation benefits." (Id.)   The letters were signed by U.S. Postal Service District Manager Anthony Williams.

The real purpose of the meeting, however, was to obtain statements from the Defendant about her physical abilities, and whether her statements coincided with surveillance video that was recorded from mid-May 2014 through mid-June 2014. (Hearing Transcript ("HT") at 13, 15, 41.)   The videos show the Defendant walking several hours a day around her yard, climbing and descending more than 800 stairs in one day, running short distances and carrying heavy items up and down stairs. (Id. at 14.)   There is also video which shows the Defendant raking for over an hour, bending and picking up sticks and carrying heavy branches. (Id.)

The meeting took place on September 25, 2014 in a conference room at the Marriott Hotel in Bloomington, Minnesota and was conducted by Special Agent Sara Harlan-Upp, a criminal investigator with the USPS OIG. (Id. at 17.)   An ASL interpreter was also present. (Id. at 18.)   Agent Harlan-Upp did not identify herself to the Defendant as a criminal investigator, but as a vocational

4

rehabilitation specialist named Sandra Black.  (Id. at 23.)  The meeting was audio and video recorded.  (Id. at 20, Gov't Ex. 3 (Video Recordings).)

During the approximately two and one half hour interview, Agent Harlan-Upp asked the Defendant questions about her medical condition.  She further explained that she would be asking the Defendant to answer a number of questions on a CCE Form.  The Defendant asked that the questions be read to her so they could be interpreted for her, as she was not a good reader.  Agent Harlan-Upp agreed, and the questions were asked and interpreted by the ASL interpreter, and Agent Harlan-Up wrote the Defendant's answers on the CCE form.

After the form was completed, the Defendant was asked to sign the form.  At that time, the Defendant stated she did not want to sign the form until she could review it with someone first.  Agent Harlan-Upp responded that by signing the form, the Defendant was certifying that the statements recorded on the form were correct and in her own words.  Thereafter, Agent Harlan-Upp reviewed with the Defendant all of the answers she had written down to ensure that she had written the Defendant's responses correctly.  After that review, Agent Harlan-Upp again asked the Defendant to sign the form.

Above the signature line of this form is the following language:

> I understand that anyone who fraudulently conceals or fails to report information that would have an effect on any benefits, or who makes a false statement or misrepresentation of a material fact in claiming a payment or benefit under the Federal Employees' Compensation Act may be subject to criminal prosecution, from which a fine and/or imprisonment may result.
> I certify that the information provided above is true and accurate to the best of my knowledge and belief.

Agent Harlan-Upp read this certification language to the Defendant, except for the phrase "from which a fine and/or imprisonment may result." Agent Harlan-Upp did state, however, that the certification language is the same language that is included on the EN-1032 forms that she had been completing periodically, and that by signing the form, the Defendant would certify that the information on the form was true and accurate. The Defendant was then given the form and she signed it. The Defendant also asked that the ASL interpreter sign the form, and the interpreter did sign the form.

## III. Motion to Suppress

The Defendant moved to suppress all statements made during the September 25, 2014 meeting, claiming that such statements were obtained during a criminal investigation conducted under the guise of a civil proceeding in

violation of her Fifth Amendment and Due Process rights, or that the statements were not voluntary and obtained in violation of her Fifth Amendment rights.

Both the Fifth Amendment and the Due Process clause provide that to be admissible in a criminal trial, the defendant's statement must have been provided voluntarily. <u>Dickerson v. United States</u>, 530 U.S. 428, 433 (2000). To determine whether a statement was given voluntarily, the Court must examine whether the defendant's will was overborne by the circumstances surrounding the giving of such statement. <u>Id.</u> at 434. "The due process test takes into consideration 'the totality of the circumstances – both the characteristics of the accused and the details of the interrogation.'" <u>Id.</u>

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." <u>Simmons v. Bowersox</u>, 235 F.3d 1124, 1132 (8th Cir. 2001).

The Magistrate Judge found, and this Court agrees, that under the totality of the circumstances, the Defendant's statements provided through sign language were not obtained in violation of her rights, as such statements were provided voluntarily. However, the Magistrate Judge further found that the

statements included in the CCE form, and her signature thereon, were not given voluntarily and should be suppressed given the fact that Agent Harlan-Upp omitted the phrase concerning fines and imprisonment when reading the certification language to the Defendant.  The Magistrate Judge determined such omission was "affirmatively deceitful" which compelled the Defendant to sign the form against her will.

    Under the totality of the circumstances, the Court finds that Agent Harlan-Upp's omission of the phrase concerning fines and imprisonment did not compel the Defendant to sign the form against her will.  The video of the September 25, 2014 interview shows Agent Harlan-Upp and the Defendant having a non-threatening, congenial discussion about the Defendant's medical condition and her physical limitations.  The format of the interview was essentially dictated by the CCE form – Agent Harlan-Upp asked the Defendant the questions listed on the form, the ASL interpreter would sign for the Agent, and the Defendant would respond through sign language that was then interpreted for the Agent. During the interview, the Defendant was allowed to move freely in the conference room, was provided water and the opportunity to use the restroom. At one point, the Defendant took a phone call while in the conference room.

As to the circumstances surrounding the Defendant signing the CCE form, the Court notes that while the Agent did not, and should have, read the entire certification language to the Defendant, the Agent did inform the Defendant that the certification language was the same certification language that is included on the EN-1032 forms for which the Defendant was required to periodically complete and sign in order to receive FECA benefits. As set forth in the Indictment, the certification language in the EN-1032 form is, for the most part, the same as the certification language in the CCE form. Both certifications include the language "may be subject to criminal prosecution, from which a fine or imprisonment, or both, may result." In addition, the Defendant was given the CCE form, and was given ample time to review it before she actually signed it. She does not appear distressed when signing the form. Under these circumstances, the Court finds that the Agent's failure to read the entire certification provision did not compel the Defendant to sign the form against her will.

Furthermore, the Court can see no basis for distinguishing between the statements interpreted by the ASL interpreter, and the statements memorialized in the CCE form. The Court agrees with the Magistrate Judge that the statements

provided through ASL interpretation were provided voluntarily. The statements memorialized on the CCE form were obtained through ASL interpretation as well.

Because the Defendant's statements made during the September 25, 2014 interview, and those statements memorialized on the CCE form, as well as the Defendant's signature were provided voluntarily, the motion to suppress must be denied.

Based on the above, the Court finds there is no need to address the Government's alternative arguments. Accordingly, the Court will not adopt those portions of the Report and Recommendation that address those alternative arguments.

**IT IS HEREBY ORDERED** that:

1. The Court adopts Sections I, II, and III (A)(1)(a) of the Report and Recommendation; and

2. Defendant Terry A. Curtin's Motion to Suppress Statements [Doc. No. 27] is **DENIED.**

Dated:  January 25, 2016                    s/Michael j. Davis
                                            MICHAEL J. DAVIS
                                            United States District Judge